**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MANAGEMENT RECRUITERS INTERNATIONAL, INC. 1717 Arch Street, Suite 200 Philadelphia, Pennsylvania 19103, | : : : : : |
| Plaintiff | : |
| v. | : : |
| MOHAMMED AL-BAKI 7317 Alandale Drive Plano, Texas 75025 | : : : : |
| and | : : |
| A&T INFOSOURCE CORPORATION 7317 Alandale Drive Plano, Texas 75025, | : : : : |
| Defendants. | |

Civil Action No. _____

## VERIFIED COMPLAINT

Plaintiff, Management Recruiters International, Inc., for its Complaint seeking injunctive relief and damages against Defendants, Mohammed Al-Baki and A&T Infosource Corporation, alleges as follows:

## THE PARTIES

1.      Plaintiff, Management Recruiters International, Inc. ("MRI") is a corporation organized and existing under the laws of Delaware with its principal place of business at 1717 Arch Street, Suite 200, Philadelphia, Pennsylvania 19103.  MRI is the successor in interest to Browns Canyon Corporation.

2.      Defendant, Mohammed Al-Baki ("Al-Baki"), is an individual alleged to be residing at 7317 Alandale Drive, Plano, Texas 75025.

3.      Defendant, A&T Infosource Corporation ("A&T"), a Texas corporation, is an entity operating in Texas, at 7317 Alandale Drive, Plano, Texas 75025.  (Jointly and severally, Al-Baki and A&T are referred to herein as "Franchisee" or "Defendants").

4.      At all times relevant to the Complaint, A&T has been under the direction and control of Al-Baki as its sole shareholder.

5.      On September 18, 2009, Al-Baki and A&T entered into a Franchise Agreement, a First Amendment to the Franchise Agreement and a side letter, dated October 26, 2009, with MRI, as attached hereto as Exhibit 1 (collectively, the "Franchise Agreement").

6.      Pursuant to the Franchise Agreement, the Defendants were granted the right to use certain MRI Marks (as defined below), including the name "Management Recruiters of Buckingham, TX," and then "Management Recruiters of Dallas Parkway, TX" (the 'Brand Name") and the Nonexclusive Marks (as defined in the Franchise Agreement), and MRI granted to Franchisee a franchise to operate one personnel placement service office under the Brand Name to be situated by Franchisee in Dallas County, Texas.  *See* Franchise Agreement (Exhibit 1) at page 1.

7.      This is an action, in part, for trademark infringement of MRI's federally registered trademarks in violation of 15 U.S.C. § 1114 and unfair competition in the nature of trademark infringement in violation of 15 U.S.C. § 1125(a).

## **JURISDICTION**

8.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331, 1332 and 1338 and 15 U.S.C. § 1121 because MRI's action includes claims for trademark infringement, false designation of origin, unfair competition, and trademark dilution under the Trademark Act of 1946 (the "Lanham Act") 15 U.S.C. § 1051 *et seq.*

9.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district.

10.     This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 15 U.S.C. § 1116(a) because Defendants have engaged and are engaging in activities that infringe Plaintiff's trademarks under Sections 32 and 43 of the Lanham Act, 15 U.S.C. § 1114(a), § 1125(a).

11.     Jurisdiction and venue are also proper in this Court under the terms of Sections 16.3 and 16.4 of the Franchise Agreement.  *See* Franchise Agreement (Exhibit 1) at page 27.

## MRI'S SYSTEM

12.     MRI is the owner of the Management Recruiters International, Inc. trade name and numerous other trademarks and service marks (collectively, the "MRI Marks") that are licensed for use in Management Recruiters International, Inc. personnel placement service offices.

13.     MRI is the franchisor of the Management Recruiters franchise system and has its headquarters in Philadelphia, Pennsylvania.

14.     MRI, since 1972, owns and operates and also grants franchises to others, such as it did with Defendants, to operate franchised Management Recruiters personnel placement service offices.  Management Recruiters offices specialize in direct hire and contract staffing services focusing in a variety of industries and primarily on management and professional level skill sets.

15.     Franchisees are licensed by MRI to use the MRI Marks in connection with the operation of their franchised personnel placement services offices. Each Management Recruiters franchised location operates under a franchise agreement, along with operations and other manuals pursuant to which MRI exercises certain guidance over the office's operation and

certain control regarding the use of the MRI Marks, including the use of the system, methods, and materials developed by MRI.

16.    MRI has spent vast sums of money advertising and promoting the MRI Marks throughout the United States, including the State of Texas. To ensure the uniformity and quality of all products and services sold as MRI products and services, and to ensure that all MRI personnel placement service offices are maintained in an attractive, safe and clean manner, MRI has continuously devoted substantial resources, time and money. In addition, MRI has spent substantial amounts of time and money to ensure that the quality of the entire operation of MRI franchised offices are maintained and continuously improved. The efforts of MRI in this regard include, but are not limited to, the following:

(a)    the development of the MRI system, methods, and materials for the operation of a management level and general personnel placement service and related activities and has established a reputation, demand, and good will for such services under the MRI Marks;

(b)    the development and presentation of numerous forms of advertising and marketing to the public, in numerous media, which emphasize the above-referenced qualities and characteristics that the consuming public can expect to find with MRI franchised businesses;

(c)    the development and improvement of its Marks and other identification to attract customers and distinguish Management Recruiters;

(d)    the development and improvement of methods of services provided for the sale of Management Recruiters products and services;

(e)    the development and maintenance of high standards, quality and services by franchised businesses;

(f)    the development of methods of improving the quality of products and services provided by franchised Management Recruiters throughout the United States; and

(g)     the training and education of franchisees in the proper operation of a Management Recruiters franchised business.

17.     As a result of MRI's efforts and expenditures, the MRI Marks have become associated in the minds of the consuming public with distinctive and uniform products and services of consistently high quality and operated by persons following substantially identical sales and operating methods and procedures.

18.     The relevant public and trade have come to know and recognize the MRI Marks and Brand Names and to associate such Marks and Brand Names with MRI in connection with its employment staffing and consulting services.

## THE FRANCHISE AGREEMENT

19.     Defendants/Franchisee entered into the Franchise Agreement on or about September 18, 2009.  *See* Franchise Agreement (Exhibit 1).

20.     On or about July 18, 2016, due to the failures and defaults of Defendants/Franchisee, MRI terminated the Franchise Agreement.

21.     As a result of the termination of Defendants'/Franchisee's Franchise Agreement, Defendants/Franchisee were/are required to follow all of the relevant post-termination obligations of the Franchise Agreement, including, without limitation, the immediate cease and desist of any and all of the Marks.

22.     Under the Franchise Agreement, Defendants' right to use the MRI Marks is conditioned on, among other things, its agreement to operate the personnel placement services office in strict compliance with MRI's standards and specifications, including utilizing MRI's instruction programs, manuals, DVDs, CDs, computer programs, and other materials in the operation of Defendants' franchised business, as set forth in the Franchise Agreement and in the MRI manuals provided to Defendants.  *See* Franchise Agreement (Exhibit 1) at pages 13 to 15.

(All references to "Browns Canyon" in the citation to the Franchise Agreement in this Complaint are replaced with [MRI] as the successor in interest to Browns Canyon).

23.     In the Recitals section, the Franchise Agreement states, in relevant part:

A.     [MRI] is the owner of several federally registered service marks, including Management Recruiters.

B.     MRI is also the owner of other marks, including "MRI", "MRI Network", "Accelerated Recruitment", and "Building the Heart of Business" (the "Non-exclusive Marks").

C.     MRI has developed a system, methods, and materials, for the operation of a management level and general personnel placement service and related activities and has established a reputation, demand and good will for such services under the Management Recruiters Marks and non-exclusive Marks.

D.     FRANCHISEE wants [MRI] to grant FRANCHISEE a license to use the Marks and wants MRI to grant FRANCHISEE a franchise for the operation of the personnel placement services described in this Agreement under the Management Recruiters Marks and the Non-exclusive Marks, including the use of the system, methods and materials developed by MRI.

*See* Franchise Agreement (Exhibit 1) at page 1.

## **GRANTS AND LIMITATIONS**

24.     In Section 1, GRANTS AND LIMITATIONS, the Franchise Agreement states, in relevant part:

1.1     [MRI] grants to FRANCHISEE the right to use the Management Recruiters Marks, under the name "Management Recruiters of Dallas Parkway, TX" (the "Brand Name"), and the Non-exclusive Marks and MRI grants to FRANCHISEE a franchise to operate one personnel placement service office under the Brand Name to be situated by FRANCHISEE at the following location (the "Location").

*See* Franchise Agreement (Exhibit 1) at page 1.

1.4   MRI grants to FRANCHISEE the right to utilize the system and methods to be disclosed to FRANCHISEE through instruction programs, manuals, DVDs, CDs, computer programs, and other materials and programs in the operation of FRANCHISEE's offices in the Location. FRANCHISEE shall use such materials, methods, and know-how and any other information furnished by MRI only in the operation of FRANCHISEE's offices that are licensed under this Agreement within the Location. FRANCHISEE shall not permit them to be used in any other operation for any other purpose. FRANCHISEE's right to use such materials, methods, and know-how is nonexclusive.

See Franchise Agreement (Exhibit 1) at page 3.

## OBLIGATIONS OF FRANCHISEE

25.   In Section 4, OBLIGATIONS OF FRANCHISEE, the Franchise Agreement states, in relevant part:

4.1   FRANCHISEE shall establish an office and commence business under the service marks designated by MRI on or before 120 days from the date of this Agreement, and shall thereafter continually maintain FRANCHISEE's business operations in conformity with the terms and conditions of this Agreement.

4.2   FRANCHISEE's business activities shall be limited to serving candidates in their seeking full-time permanent positions of employment and employers in their seeking such candidates. FRANCHISEE shall not engage in any other type of staffing related business unless FRANCHISEE has been granted a franchise or license by MRI or by MRI CONTRACT STAFFING, INC. to engage in such other type of business or MRI has otherwise granted such permission by an amendment to this Agreement or other writing signed by an authorized officer of MRI. As an example, FRANCHISEE is precluded from engaging in the outplacement or the temporary employment business except pursuant to such an agreement or writing.

See Franchise Agreement (Exhibit 1) at page 7.

26.   No authorization was provided by MRI for Defendants to engage in other staffing related business(es).

27.     Section 4, OBLIGATIONS OF FRANCHISEE, provides further:

4.6     All of the forms, stationary, advertising materials, brochures, and other printed materials used by FRANCHISEE in the conduct of FRANCHISEE's business shall be the standard materials designed by MRI. If FRANCHISEE wishes to use any different or additional materials, FRANCHISEE shall first obtain the written approval of MRI. Such materials shall conform to the quality, color, format, and appearance previously or subsequently established by MRI. MRI may designate the content, appearance, linking, URL's, domain name, and other aspects of FRANCHISEE's internet site and other methods of electronic communication. The requirements of this Subsection do not impose any duty upon FRANCHISEE to obtain the approval of the terms of any fee agreement utilized by FRANCHISEE.

4.7     FRANCHISEE shall adopt and use methods prescribed by MRI for keeping business books and records and shall make and issue consecutively numbered invoices on a form provided or specified by MRI, for all charges rendered in FRANCHISEE's activities pursuant to this Agreement.

4.8     FRANCHISEE shall send MRI an annual statement of income and expenses for each calendar year, upon forms prescribed or approved by MRI, so as to be received by MRI within thirty days after the end of the calendar year. If FRANCHISEE uses a fiscal year that is other than a calendar year, FRANCHISEE shall also send MRI such an annual statement for FRANCHISEE's fiscal year, so as to be received by MRI within thirty days after the end of the FRANCHISEE's fiscal year.

*See* Franchise Agreement (Exhibit 1) at page 7.

4.13    FRANCHISEE shall devote FRANCHISEE's full time and best efforts to the promotion and advancement of FRANCHISEE's business under this Agreement and shall not engage in any activities that might interfere in any manner, directly or indirectly, with the operation of such business. The INDIVIDUAL FRANCHISEE shall at all times be the full time manager of FRANCHISEE's office.

*See* Franchise Agreement (Exhibit 1) at pages 8 and 9.

## **PROPRIETARY MARKS**

28.     In Section 8, PROPRIETARY MARKS, the Franchise Agreement states, in relevant part:

> 8.1     "Proprietary Marks" means all trade names, trademarks, service marks and slogans licensed to FRANCHISEE under this agreement and all current and future trade names, trademarks, service marks, logos, and slogans in which [MRI] or MRI has an interest or which [MRI] or MRI may permit FRANCHISEE to use, including, without limitation, the Exclusive Marks and the Non-exclusive Marks.

> 8.2     With respect to FRANCHISEE's licensed use of the Proprietary Marks Pursuant to this Agreement, FRANCHISEE agrees that:

>> 8.2.1.   FRANCHISEE shall use only the Proprietary Marks designated by [MRI], and shall use them only in the manner authorized and permitted by [MRI].

>> 8.2.2.   FRANCHISEE shall use the Proprietary Marks only for the operation of the franchised business and only in connection with the office at the Location.

>> 8.2.3.   FRANCHISEE's right to use the Proprietary Marks is limited to such uses as are authorized under this Agreement, and any unauthorized use thereof shall constitute an infringement of [MRI's] rights.

>> 8.2.4.   FRANCHISEE shall not use the Proprietary Marks to incur any obligation or indebtedness on behalf of [MRI] or MRI.

*See* Franchise Agreement (Exhibit 1) at pages 13 and 14.

> 8.4.     FRANCHISEE expressly understands and acknowledges that:

>> 8.4.1.   [MRI] is the owner of all right, title and interest in and to the Proprietary Marks and the goodwill associated with and symbolized by them.

8.4.2. The Proprietary Marks are valid and serve to identify MRI's system and those who are authorized to operate under the system.

8.4.3. FRANCHISEE shall not directly or indirectly contest the validity or [MRI's] ownership of the Proprietary Marks or MRI's license to use the Proprietary Marks.

8.4.4. FRANCHISEE's use of the Proprietary Marks pursuant to this Agreement does not give FRANCHISEE any ownership interest or other interest in or to the Proprietary Marks, except the license granted by this Agreement.

\*\*\*

8.4.6 Any and all goodwill arising from FRANCHISEE's use of the Proprietary Marks in its franchised operation under the system shall inure solely and exclusively to [MRI's] benefit, and upon expiration or termination of this Agreement and the license herein granted, no monetary amount shall be assigned as attributable to any goodwill associated with FRANCHISEE's use of the system of the Proprietary Marks.

\*\*\*

8.6. FRANCHISEE's domain names, URLs, and electronic addresses shall be subject to [MRI's] approval and control.

*See* Franchise Agreement (Exhibit 1) at pages 14 and 15.

## RIGHTS UPON EXPIRATION AND TERMINATION

29. In Section 13, RIGHTS UPON EXPIRATION AND TERMINATION, the

Franchise Agreement states, in relevant part:

13.1. Upon the expiration or termination of this Agreement, unless it has been renewed in accordance with Subsection 12.3, FRANCHISEE shall:

13.1.1. not later than the effective date of expiration or termination, cease and thereafter forever abstain from using the Granted Marks and any service marks, names or slogans furnished by [MRI] to any of its licensees or used by MRI or any of its

affiliated, and any other service marks, names or slogans used by FRANCHISEE in the conduct of FRANCHISEE's business pursuant to this Agreement, including but not limited to, the following words, phrases, and initials: "Management," "Recruiters," "Recruiter," "Sales," "Consultants," "Compu," "Search," "MR," "MRI," "CS," "SC," "SCI," "OM 5," "Office," "Mates," "Five," "Network," "Day," "Star," or any combination of the words resulting in the initials "MR," "MRI," "SC," "SCI," "OM," "OM 5," or "CS," in any manner and shall cause any registration of said service marks, names or slogans to be withdrawn and cause FRANCHISEE's corporate, company, or partnership names to be immediately withdrawn, cancelled or changed to a name that is not similar or in any way related to the aforementioned service marks, names, slogans, words, phrases or initials.  Upon written request of MRI, FRANCHISEE shall execute immediately all such documents as may be necessary or desired by MRI to assign or transfer to [MRI] (or any person designated by it) and to confirm its ownership of and right to use all of the foregoing names, service marks, slogans, words, phrases or initials; (it being understood and agreed that nothing contained in this Subsection shall be construed as implying any grant of rights in or to any names or marks other than as expressly granted in Subsection 1.1 of this Agreement);

13.1.2. not later than the effective date of expiration or termination, cease and thereafter forever abstain from using the telephone number(s) used for FRANCHISEE's service business and immediately cause the aforementioned telephone number(s) to be transferred and assigned to MRI or its designee(s) or to be cancelled or withdrawn, as determined by MRI; FRANCHISEE shall not allow said phone number or numbers to be cancelled or discontinued unless it is notified, in writing, by MRI, on or before the effective date of expiration or termination, that MRI or its designee does not desire to accept said phone number or numbers; FRANCHISEE further agrees that said telephone number(s) shall not be used by FRANCHISEE in any manner whatsoever for a period of three years from the date of expiration or termination; not later than the effective

date of expiration or termination, FRANCHISEE shall pay all monies due any telephone company for its services, including, but not limited to, Yellow Pages advertising charges, up to and including the effective date of expiration or termination; and FRANCHISEE shall also cancel all Yellow Pages advertising and other telephone book and directory listings pertaining to the business hereunder, effective not later than the effective date of expiration or termination;

13.1.3. not later than the effective date of expiration or termination, return to MRI, freight prepaid, the hardware and software loaned to you in Section 3, all instructions, operations manuals, DVDs, CDs, videocassettes, training manuals, computer software and documentation, applications, books, forms and materials, and other documents bearing any of the Granted Marks  or any other mark, name or slogan furnished or used by MRI, Franchise Services, or [MRI] or containing any copyrighted, patented, proprietary, or confidential material of MRI, Franchise Services, or [MRI], and thereafter than all retain or use any of such documents and materials or any copies; and MRI, Franchise Services, and [MRI] each is hereby authorized and empowered peaceably to take possession of the foregoing documents and materials;

13.1.4. not later than the effective date of expiration or termination, cease using an relinquish any rights whatsoever in and to any of the service marks, trade names, and any information secured hereunder and said rights shall revert to [MRI] and MRI;

13.1.5. not later than the effective date of expiration or termination, cease and thereafter forever abstain from using the URL and Internet addresses used for FRANCHISEE's business and immediately use the URL and Internet addresses to be transferred and assigned to MRI;

13.1.6. continue to make, so as to be received by MRI by the tenth day of each of the succeeding months, the reports provided for in Section 2 above, and to continue to make the payments of the royalty fee and advertising fees in the manner and at the rates specified in Section 2 above, for any placements that

were made or services provided by FRANCHISEE during the term of this Agreement but for which payment to FRANCHISEE was made after the terms of this Agreement; and

13.1.7. provide, within 30 days after the request, copies of those books, papers, records and materials described in Subsection 4.19 that have been requested by MRI.

*See* Franchise Agreement (Exhibit 1) at page 25.

13.4.    Upon the effective date of expiration or termination of this Agreement, all money owing to MRI, if any, (including any monies due on the franchise fee specified in Subsection 2.1, and royalty or advertising fees at the rates specified in Subsection 2.2 for placements that were made or services that were provided by FRANCHISEE for which payment is made to FRANCHISEE on or before the effective date of expiration or termination) shall immediately become due and payable notwithstanding any contrary or inconsistent provision of this Agreement, any note, or other documents, and FRANCHISEE shall pay same on such date.  After the effective date of expiration or termination, MRI shall be under no obligation to repay any monies theretofore paid by MRI by FRANCHISEE, unless any of said monies represent overpayments not previously credited to FRANCHISEE's account.

13.5.    FRANCHISEE agrees that the issuance of an injunction enjoining any violation of terms of this Section and/or compelling compliance with such terms is appropriate and proper relief for any such violation.

*See* Franchise Agreement (Exhibit 1) at pages 25 and 26.

## DEFENDANTS' COMPLIANCE DEFAULTS

30.    On March 16, 2016, MRI sent Defendants a Notice of Cure of Franchise Agreement pursuant to their defaults ("Notice of Default"), advising Defendants that if they failed to cure the defaults within thirty (30) days, MRI reserved its right to terminate the Franchise Agreement. To assist Defendants in curing its defaults, MRI pointed out the defaults, including but not limited to, failure to pay royalties, conducting staffing business outside of the MRI Franchise Agreement, unauthorized use of MRI's resources, failure to comply with audit requests, failure to provide financial information, et cetera.  The letter is attached as Exhibit 2.

31.     On July 18, 2016, as a result of Defendants' continuing defaults and its continuing failure to cure the defaults enumerated in the Notice of Default, MRI terminated the Franchise Agreement. In the Notice of Termination of Action ("Notice of Termination"), MRI reminded Defendants that it was required to comply with its post-termination obligations under the Franchise Agreement, including its obligations to cease using MRI Marks. The Notice of Termination is attached as Exhibit 3.

32.     Defendants have failed to comply with their obligations pursuant to the termination of the Franchise Agreement as follows:

(a)     failed to stop using Defendants' marks in violation of Section 13.1.1 of the Franchise Agreement, among others;

(b)     failed to stop using the telephone numbers in violation of Section 13.1..2;

(c)     failed to cease using the service marks, trade names, and information secured thereunder in violation of Section 13.1.4;

(d)     failed to stop using the URL and Internet addresses used for Franchisee's business in violation of Section 13.1.5;

(e)     failed to provide reports in violation of Section 13.1.6;

(f)     failed to provide copies of books, papers, records, and materials described in Subsection in 4.1.9, in violation of Section 13.1.7;

(g)     failed to pay all monies due and owing to MRI in violation of Section 13.4; and

(h)     failed to return MRI's materials as described and in violation of Section 13.1.3.

## DEFENDANTS' FRAUDULENT MISREPRESENTATIONS

33.     In spite of the termination of the Franchise Agreement and Defendants' obligations to comply with post-termination requirements of the Franchise Agreement, Defendants blatantly continue to violate the terms of the Franchise Agreement and various trademark laws by continuing to use the MRI Marks, including but not limited to, on certain internet webpages, such as LinkedIn®, www.mriofdallasparkway.com, and in disregard of a cease and desist letter sent on August 3, 2016, attached hereto as Exhibit 4.

34.     Defendants specifically agreed in Section 13.5 to the issuance of an injunction enjoining any violations of the terms of Section 13 of the Franchise Agreement and/or compelling compliance with such terms and other appropriate relief.  *See* Franchise Agreement (Exhibit 1) at page 26.

35.     Defendants continue to use the MRI Marks, to incur debt and fraudulently represent themselves as MRI.

36.     Defendants have misrepresented that MRI is responsible for fees, costs, or the like incurred by Defendants.

37.     Defendants have continued to utilize the MRI Marks, falsely hold themselves out as, and/or affiliated with, MRI, fraudulently incurred debt by claiming that they are MRI and/or affiliated with MRI, fraudulently having bills sent to MRI, committing fraud and misrepresentation upon the consuming public, the unauthorized use of MRI's Marks, including the use of the system, methods, and materials developed by MRI, along with the continued failure to cure the underlying Franchise Agreement defaults.

38.     Defendants knowingly and fraudulently claim to be MRI Contract Staffing, Inc.

39.     As a result, MRI filed this action to enforce its rights under the Franchise Agreement, trademark law and common law.

## COUNT I

### FEDERAL TRADEMARK INFRINGEMENT AND FALSE DESIGNATION AND MISREPRESENTATION OF ORIGIN

40.     MRI incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

41.     Despite termination of the Franchise Agreement, Defendants continue to operate an MRI personnel placement service office located at 7317 Alandale Drive, Plano, Texas 75025, using the MRI Marks and otherwise identifying itself as an authorized MRI franchise.

42.     Defendants have knowledge of the termination of the Franchise Agreement and are intentionally trading on MRI Marks, and using the MRI business system, methods, and materials and deliberately misappropriating, for its own benefit, MRI's goodwill built up over many years at substantial expense by MRI.

43.     Defendants' conduct is also calculated to lure the consuming public into believing that Defendants are still operating its business in compliance with MRI standards.

44.     Regardless of whether or not there is a Franchise Agreement, Defendants are in an unauthorized manner using MRI's trademarks.

45.     Defendants' conduct infringes MRI's trademark rights and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). Defendants' false representation of being MRI and/or affiliated with Management Recruiters International, Inc. also constitutes false designation of the origin of Defendants' services in violation of 15 U.S.C. § 1125(a).

46.     Defendants' continued unauthorized use of the MRI Marks is depriving MRI of revenues and profits and damaging its reputation and goodwill.

47.     Defendants' conduct was and, until ceased, will remain willful.

48.     Defendants' conduct has subjected and will continue to subject MRI to irreparable harm. MRI has no adequate remedy at law because it cannot be adequately compensated for the

deprivation and dilution of the consumer recognition and goodwill built up under the MRI Marks, trade dress and business system over many years.

49.     Without an injunction ordering Defendants to cease to use or display any of MRI's trademarks or service marks, or any other logos, symbols or trade dress of MRI, or any confusingly similar trademarks, service marks, logos, symbols or trade dress, in connection with the advertising, distribution, display or sale of any product of service, MRI will continue to suffer irreparable harm and damage to its business.

**WHEREFORE,** MRI prays for the following relief:

(a)     A preliminary and permanent injunction Order requiring Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or entity, to immediately:

(i)     cease to use, whether by advertising or in any manner whatsoever, the MRI Marks and any and all other trademarks of MRI or its affiliates (collectively, "Marks") or any colorable imitations thereof, or any forms, manuals, slogans, signs, the Marks, symbols or devices used in connection with the operation of the personnel placement service office, the MRI system, methods, and materials developed by MRI or in any other manner whatsoever;

(ii)     make, or cause to be made, such changes in any and all signs and the interior and exterior of the Defendants' facilities so as to effectively distinguish the same from their former appearance and from any other location;

(iii)     remove and return, at Defendants' cost, to MRI all MRI displays, equipment and supplies;

(iv)      immediately turn over to MRI all training materials, printed forms, and any and all other materials relating to the operation of the MRI business, and all copies thereof;

(v)      cancel any assumed name or equivalent registration which contains any of the Marks and furnish MRI with satisfactory evidence of compliance with this obligation within five (5) days of the Order;

(vi)      immediately turn over to MRI all hardware and software loaned to Defendants set forth in Section 3 of the Franchise Agreement, all instructions, operations manuals, DVDs, CDs, video cassettes, training manuals, computer software and documentation, applications, books, forms and materials, and other documents bearing any of the granted marks or any other mark, name, or slogan, furnished or used by MRI, or containing any copyrighted, patented, proprietary or confidential material of MRI, and thereafter;

(vii)      assign to MRI or its designee all Defendants' right, title and interest in and to Defendants' telephone numbers, websites, domain names and/or search engine identifiers and notify the telephone company and all listing agencies of the termination or expiration of Defendants' right to use any website, domain, metatag and/or telephone number and any regular, classified or other telephone directory listing associated with the Marks and to immediately terminate all such matters; and

(viii)    immediately shut down the website www.mriofdallasparkway.com

(b)      A preliminary and permanent injunction enjoining Defendants, their agents, representatives and employees, officers, directors, shareholders, members and the like, and all those acting by or under, or in concert with them, from infringing the Marks;

(c)      Payment of all royalties and other funds due and owing to Plaintiff;

(d)      An accounting by Defendants of the profits to which MRI may be entitled;

(e)     Treble damages pursuant to 15 U.S.C. §1117;

(f)     Exemplary damages;

(g)     Attorneys' fees and costs incurred in connection with this action;

(h)     Pre-judgment and post-judgment interest; and

(i)     Such other relief as this Court may deem proper.

## COUNT II

### TRADEMARK DILUTION AND UNFAIR COMPETITION

50.     MRI incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

51.     Defendants' conduct, as set forth above, constitutes dilution of the Management Recruiters International, Inc. mark under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

52.     Defendants' continued use of the Marks constitutes a willful disregard of MRI's rights, with intent to trade on and appropriate the reputation and goodwill which MRI has built up in the MRI Marks and to divert customers and revenues from MRI and other MRI Franchisees. Therefore, Defendants' conduct is also a violation of the common law of unfair competition.

53.     As a result, MRI has suffered and will continue to suffer irreparable damage to its reputation and goodwill for which there is no adequate remedy at law.

54.     Defendants' conduct was and, until ceased, will remain willful.

55.     MRI is entitled to injunctive relief under Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(c).

56.     Without an injunction ordering Defendants to cease to use or display any of MRI's trademarks or service marks, or any other logos, symbols or trade dress of MRI, or any confusingly similar trademarks, service marks, logos, symbols or trade dress, in connection with

the advertising, distribution, display or sale of any product of service, MRI will continue to suffer irreparable harm and damage to its business.

**WHEREFORE,** MRI prays for the following relief:

(a)     A preliminary and permanent injunction Order requiring Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or entity, to immediately:

(i)     cease to use, whether by advertising or in any manner whatsoever, the MRI Marks and any and all other trademarks of MRI or its affiliates (collectively, "Marks") or any colorable imitations thereof, or any forms, manuals, slogans, signs, the Marks, symbols or devices used in connection with the operation of the personnel placement service office, the MRI system, methods, and materials developed by MRI or in any other manner whatsoever;

(ii)     make or cause to be made to the office, such changes in the signs and interior and exterior of the facility so as to effectively distinguish the same from their former appearance and from any other Management Recruiters International, Inc. store;

(iii)     remove and return, at Defendants' cost, to MRI all MRI displays, equipment and supplies;

(iv)     immediately turn over to MRI all training materials, printed forms, and any and all other materials relating to the operation of the MRI business, and all copies thereof;

(v)     cancel any assumed name or equivalent registration which contains any of the Marks and furnish MRI with satisfactory evidence of compliance with this obligation within five (5) days of the Order;

(vi)    immediately turn over to MRI all hardware and software loaned to Defendants set forth in Section 3 of the Franchise Agreement, all instructions, operations manuals, DVDs, CDs, video cassettes, training manuals, computer software and documentation, applications, books, forms and materials, and other documents bearing any of the granted marks or any other mark, name, or slogan, furnished or used by MRI, or containing any copyrighted, patented, proprietary or confidential material of MRI, and thereafter;

(vii)    assign to MRI or its designee all Defendants' right, title and interest in and to Defendants' telephone numbers, websites, domain names and/or search engine identifiers and shall notify the telephone company and all listing agencies of the termination or expiration of Defendants' right to use any website, domain, metatag and/or telephone number and any regular, classified or other telephone directory listing associated with the Marks and to authorize the transfer of same to or at the direction of MRI; and

(viii)    immediately shut down the website [www.mriofdallasparkway.com](http://www.mriofdallasparkway.com)

(b)    A preliminary and permanent injunction enjoining Defendants, their agents, representatives and employees, officers, directors, shareholders, members and the like, and all those acting by or under, or in concert with them, from infringing the Marks;

(c)    Payment of all royalties and other funds due and owing to Plaintiff;

(d)    An accounting by Defendants of the profits to which MRI may be entitled;

(e)    Treble damages pursuant to 15 U.S.C. §1117;

(f)    Exemplary damages;

(g)    Attorneys' fees and costs incurred in connection with this action;

(h)    Pre-judgment and post-judgment interest; and

(i)    Such other relief as this Court may deem proper.

<u>**COUNT III**</u>

**<u>BREACH OF THE CONTRACT/FRANCHISE AGREEMENT</u>**

57.     MRI incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

58.     Defendants breached the contract, both before termination and post-termination.

59.     On March 16, 2016, MRI sent Defendants a Notice of Default, advising Defendants that if they failed to cure the defaults within thirty (30) days, MRI reserved its right to terminate the Franchise Agreement. To assist Defendants in curing its defaults, MRI pointed out the defaults, including but not limited to, failure to pay royalties, conducting staffing business outside of the MRI Franchise Agreement, unauthorized use of MRI's resources, failure to comply with audit requests, failure to provide financial information, et cetera.  The letter is attached as Exhibit 2.

60.     On July 18, 2016, the Notice of Termination was issued, terminating the Franchise Agreement due to Defendants' defaults and failure to cure.

61.     Defendants' actions set forth above were material breaches of the Franchise Agreement.

62.     Based upon the foregoing, Plaintiff terminated the Franchise Agreement, triggering additional obligations on behalf of Defendants.

63.     Defendants have failed to comply with their obligations pursuant to the termination of the Franchise Agreement as follows:

(a)     failed to stop using Defendants' marks in violation of Section 13.1.1 of the Franchise Agreement, among others;

(b)     failed to stop using the telephone numbers in violation of Section 13.1..2;

(c)     failed to cease using the service marks, trade names, and information secured thereunder in violation of Section 13.1.4;

(d)     failed to stop using the URL and Internet addresses used for Franchisee's business in violation of Section 13.1.5;

(e)     failed to provide reports in violation of Section 13.1.6;

(f)     failed to provide copies of books, papers, records, and materials described in Subsection in 4.1.9, in violation of Section 13.1.7;

(g)     failed to pay all monies due and owing to MRI in violation of Section 13.4; and

(h)     failed to return MRI's materials as described and in violation of Section 13.1.3.

64.     In spite of the termination of the Franchise Agreement and Defendants' obligations to comply with post-termination requirements of the Franchise Agreement, Defendants blatantly continue to violate the terms of the Franchise Agreement and various trademark laws by continuing to use the MRI Marks, including but not limited to, an ongoing website, www.mriofdallasparkway.com, and in disregard of a cease and desist letter sent on August 3, 2016, attached hereto as Exhibit 4.

65.     Defendants specifically agreed in Section 13.5 to the issuance of an injunction enjoining any violations of the terms of this section and/or compelling compliance with such terms and other appropriate relief.

66.     As a result, MRI filed this action to enforce its rights under the Franchise Agreement and trademark law.

67.     Defendants continue to use the MRI Marks to incur debt and fraudulently have represented themselves as MRI and that MRI is responsible fees, costs, or the like, incurred by Defendants.

68.     Defendants have continued to utilize the MRI Marks, falsely hold themselves out as, and/or affiliated with, MRI, fraudulently incurred debt by claiming that they are MRI and/or affiliated with MRI, fraudulently having bills sent to MRI, committing fraud and misrepresentation upon the consuming public, the unauthorized use of MRI Marks, including the use of the system, methods, and materials developed by MRI, along with the continued failure to cure the underlying Franchise Agreement defaults.

**WHEREFORE,** MRI prays for the following relief:

(a)     A preliminary and permanent injunction Order requiring Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or entity, to immediately:

(i)     cease to use, whether by advertising or in any manner whatsoever, the MRI Marks and any and all other trademarks of MRI or its affiliates (collectively, "Marks") or any colorable imitations thereof, or any forms, manuals, slogans, signs, the Marks, symbols or devices used in connection with the operation of the personnel placement service office, the MRI system, methods, and materials developed by MRI or in any other manner whatsoever;

(ii)     make or cause to be made to the office, such changes in the signs and interior and exterior of the facility so as to effectively distinguish the same from their former appearance and from any other Management Recruiters International, Inc. store;

(iii)     remove and return, at Defendants' cost, to MRI all MRI displays, equipment and supplies;

(iv)    immediately turn over to MRI all training materials, printed forms, and any and all other materials relating to the operation of the MRI business, and all copies thereof;

(v)    cancel any assumed name or equivalent registration which contains any of the Marks and furnish MRI with satisfactory evidence of compliance with this obligation within five (5) days of the Order;

(vi)    immediately turn over to MRI all hardware and software loaned to Defendants set forth in Section 3 of the Franchise Agreement, all instructions, operations manuals, DVDs, CDs, video cassettes, training manuals, computer software and documentation, applications, books, forms and materials, and other documents bearing any of the granted marks or any other mark, name, or slogan, furnished or used by MRI, or containing any copyrighted, patented, proprietary or confidential material of MRI, and thereafter;

(vii)    assign to MRI or its designee all Defendants' right, title and interest in and to Defendants' telephone numbers, websites, domain names and/or search engine identifiers and notify the telephone company and all listing agencies of the termination or expiration of Defendants' right to use any website, domain, metatag and/or telephone number and any regular, classified or other telephone directory listing associated with the Marks and to immediately terminate all such matters; and

(viii)    immediately shut down the website www.mriofdallasparkway.com

(b)    A preliminary and permanent injunction enjoining Defendants, their agents, representatives and employees, officers, directors, shareholders, members and the like, and all those acting by or under, or in concert with them, from infringing the Marks;

(c)    Payment of all royalties and other funds due and owing to Plaintiff;

(d)    An accounting by Defendants of the profits to which MRI may be entitled;

(e)     Treble damages pursuant to 15 U.S.C. §1117;

(f)     Exemplary damages;

(g)     Attorneys' fees and costs incurred in connection with this action;

(h)     Pre-judgment and post-judgment interest; and

(i)     Such other relief as this Court may deem proper.

**COUNT IV**

**FRAUD**

69.     MRI incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

70.     On March 16, 2016, MRI sent Defendants a Notice of Default, advising Defendants that if they failed to cure the defaults within thirty (30) days, MRI reserved its right to terminate the Franchise Agreement. To assist Defendants in curing its defaults, MRI pointed out the defaults, including but not limited to, failure to pay royalties, conducting staffing business outside of the MRI Franchise Agreement, unauthorized use of MRI's resources, failure to comply with audit requests, failure to provide financial information, et cetera.  The letter is attached as Exhibit 2.

71.     On July 18, 2016, as a result of Defendants' continuing defaults and its continuing failure to cure the defaults enumerated in the Notice of Default, MRI terminated the Franchise Agreement. In the Notice of Termination, MRI reminded Defendants that it was required to comply with its post-termination obligations under the Franchise Agreement, including its obligations to cease using MRI Marks and to cease operating a competing business. The Notice of Termination is attached as Exhibit 3.

72. Subsequent to the termination, Defendants have continued to hold themselves out as franchisees, as MRI and/or affiliated with MRI, utilizing MRI Marks and fraudulently misrepresenting that they are MRI and/or affiliated with Plaintiff.

73. Defendants are committing fraud and misrepresentation upon the consuming public by intentionally and falsely misrepresenting that they are MRI and/or their affiliation with MRI, in order to mislead the public and obtain monetary financial gain, all to the detriment of Plaintiff and the consuming public.  The fraudulent misrepresentations not only mislead the public, but damage the MRI brand overall, since Defendants have failed to meet quality standards and are operating outside any operational oversight by MRI, since Defendants are no longer affiliated with MRI based upon the termination of the Franchise Agreement on July 18, 2016.  Defendants are intentionally misrepresenting this information so that the public will rely upon it to their detriment and to Defendants' pecuniary gain.  Defendants' actions have caused damages to Plaintiff.

74. Defendants' actions amount to intentional fraud, misrepresentation, and deception to both the consuming public and MRI.

75. Defendants have also been holding themselves out to suppliers, vendors, and/or other parties as being MRI and/or affiliated with MRI and, as such, attempting to obtain credit, services, products, and/or materials; and telling the providing parties to send the bills to MRI headquarters in Philadelphia, Pennsylvania.

76. Defendants' actions in this regard amount to fraud, misrepresentation, deception, and fraud in the inducement.

77. Defendants' actions are intentional, have caused Plaintiff damages, and will continue to cause Plaintiff damages into the foreseeable future.

78.    Plaintiff has been put on notice by one potential vendor of a claim and/or possible lawsuit regarding outstanding invoices that Defendants have incurred due to their fraudulent actions and misrepresentations.

**WHEREFORE,** MRI prays for the following relief:

(a)    A preliminary and permanent injunction Order requiring Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or entity, to immediately:

(i)    cease to use, whether by advertising or in any manner whatsoever, the MRI Marks and any and all other trademarks of MRI or its affiliates (collectively, "Marks") or any colorable imitations thereof, or any forms, manuals, slogans, signs, the Marks, symbols or devices used in connection with the operation of the personnel placement service office, the MRI system, methods, and materials developed by MRI or in any other manner whatsoever;

(ii)    make or cause to be made to the office, such changes in the signs and interior and exterior of the facility so as to effectively distinguish the same from their former appearance and from any other Management Recruiters International, Inc. store;

(iii)    remove and return, at Defendants' cost, to MRI all MRI displays, equipment and supplies;

(iv)    immediately turn over to MRI all training materials, printed forms, and any and all other materials relating to the operation of the MRI business, and all copies thereof;

(v)    cancel any assumed name or equivalent registration which contains any of the Marks and furnish MRI with satisfactory evidence of compliance with this obligation within five (5) days of the Order;

(vi)     immediately turn over to MRI all hardware and software loaned to Defendants set forth in Section 3 of the Franchise Agreement, all instructions, operations manuals, DVDs, CDs, video cassettes, training manuals, computer software and documentation, applications, books, forms and materials, and other documents bearing any of the granted marks or any other mark, name, or slogan, furnished or used by MRI, or containing any copyrighted, patented, proprietary or confidential material of MRI, and thereafter;

(vii)    assign to MRI or its designee all Defendants' right, title and interest in and to Defendants' telephone numbers, websites, domain names and/or search engine identifiers and notify the telephone company and all listing agencies of the termination or expiration of Defendants' right to use any website, domain, metatag and/or telephone number and any regular, classified or other telephone directory listing associated with the Marks and to immediately terminate all such matters; and

(viii)   immediately shut down the website www.mriofdallasparkway.com

(b)      A preliminary and permanent injunction enjoining Defendants, their agents, representatives and employees, officers, directors, shareholders, members and the like, and all those acting by or under, or in concert with them, from infringing the MarksPayment of all royalties and other funds due and owing Plaintiff;

(c)      An accounting by Defendants of the profits to which MRI may be entitled;

(d)      Treble damages pursuant to 15 U.S.C. §1117;

(e)      Exemplary damages;

(f)      Attorneys' fees and costs incurred in connection with this action;

(g)      Pre-judgment and post-judgment interest; and

(h)      Punitive damages;

(i)      Such other relief as this Court may deem proper.

## COUNT V

## CONTRACTUAL INDEMNIFICATION

79.     MRI incorporates by reference the preceding paragraphs as if fully set forth in this paragraph.

80.     Pursuant to Paragraph 14 of the Franchise Agreement, Franchisee must act independently and was not authorized to act on behalf of MRI, since this was a licensing agreement only.  *See* Franchise Agreement (Exhibit 1) at page 26.

81.     Furthermore, pursuant to Paragraph 14.2, Franchisee shall indemnify and save harmless MRI from any and all actions, claims, and demands arising out of franchisee's activities and to reimburse MRI for any and all costs, damages, and expenses, including attorneys' fees.

82.     Plaintiff is entitled to be indemnified for claims by these vendors and/or other individuals related to Defendants' fraudulent misrepresentations.

**WHEREFORE,** MRI prays for the following relief:

(a)     A preliminary and permanent injunction Order requiring Defendants, their agents, servants, employees and attorneys, and all others in active concert or participation with any of them, either directly or indirectly, for themselves, or through, on behalf of, or in conjunction with any other person, persons, partnership, corporation or entity, to immediately:

(i)     cease to use, whether by advertising or in any manner whatsoever, the MRI Marks and any and all other trademarks of MRI or its affiliates (collectively, "Marks") or any colorable imitations thereof, or any forms, manuals, slogans, signs, the Marks, symbols or devices used in connection with the operation of the personnel placement service office, the MRI system, methods, and materials developed by MRI or in any other manner whatsoever;

(ii)     make or cause to be made to the office, such changes in the signs and interior and exterior of the facility so as to effectively distinguish the same from their former appearance and from any other Management Recruiters International, Inc. store;

(iii)    remove and return, at Defendants' cost, to MRI all MRI displays, equipment and supplies;

(iv)    immediately turn over to MRI all training materials, printed forms, and any and all other materials relating to the operation of the MRI business, and all copies thereof;

(v)     cancel any assumed name or equivalent registration which contains any of the Marks and furnish MRI with satisfactory evidence of compliance with this obligation within five (5) days of the Order;

(vi)    immediately turn over to MRI all hardware and software loaned to Defendants set forth in Section 3 of the Franchise Agreement, all instructions, operations manuals, DVDs, CDs, video cassettes, training manuals, computer software and documentation, applications, books, forms and materials, and other documents bearing any of the granted marks or any other mark, name, or slogan, furnished or used by MRI, or containing any copyrighted, patented, proprietary or confidential material of MRI, and thereafter;

(vii)   assign to MRI or its designee all Defendants' right, title and interest in and to Defendants' telephone numbers, websites, domain names and/or search engine identifiers and notify the telephone company and all listing agencies of the termination or expiration of Defendants' right to use any website, domain, metatag and/or telephone number and any regular, classified or other telephone directory listing associated with the Marks and to immediately terminate all such matters; and

(viii)  immediately shut down the website www.mriofdallasparkway.com

(b)     A preliminary and permanent injunction enjoining Defendants, their agents, representatives and employees, officers, directors, shareholders, members and the like, and all those acting by or under, or in concert with them, from infringing the Marks;

(c)     Payment of all royalties and other funds due and owing to Plaintiff;

(d)     An accounting by Defendants of the profits to which MRI may be entitled;

(e)     Exemplary damages;

(f)     Attorneys' fees and costs incurred in connection with this action;

(g)     Pre-judgment and post-judgment interest; and

(h)     Such other relief as this Court may deem proper.

## NO WAIVER OF ANY CLAIMS

## DISPUTE RESOLUTION PROCEDURE

83.     By filing this Complaint, MRI does not intend to waive or release and is not waiving or releasing its right to obtain resolution of any other claims, including claims for other damages and sums owed pursuant to the terms of the Franchise Agreement and its dispute resolution provisions.

Respectfully submitted,
REGER RIZZO & DARNALL LLP

By: _____
Harris J. Chernow, Esquire
Edward J. Kelbon, Jr., Esquire
Cira Centre, 13th Floor
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 495-6500
Facsimile:  (215) 495-6600
hchernow@regerlaw.com
ekelbon@regerlaw.com
*Attorneys for Plaintiff, Management Recruiters International, Inc.*

Dated: _9 - 4 - 18_

## V E R I F I C A T I O N

I, LORINDA C. RITTS, Corporate Counsel for Management Recruiters International, Inc., verify that the facts set forth in the foregoing Verified Complaint are true and correct to the best of my knowledge, information and belief and that said statements are made subject to the penalties of 28 U.S.C § 1746 relating to unsworn falsification to authorities.

_____
LORINDA C. RITTS, Corporate Counsel for
Management Recruiters International, Inc.

Dated:_____9 - 4 - 18_____